## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel.* HECTOR H. BALDERAS, Attorney General<br><br>        Plaintiff,<br><br>  v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN AG; AUDI OF AMERICA, LLC; AUDI AG; PORSCHE CARS NORTH AMERICA, INC; PORSCHE AG,<br><br>        Defendants. | Case No. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441(a), 1441(c), and 1446, defendants Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen AG ("VWAG"), Audi of America, LLC ("Audi America"), Audi AG ("Audi AG"), Porsche Cars North America, Inc. ("PCNA"), and Porsche AG (collectively, "defendants"), notice removal of this civil action from the First Judicial District Court, Santa Fe County, New Mexico to the United States District Court for the District of New Mexico.  This Court has subject matter jurisdiction—and this matter is therefore removable—because the State of New Mexico raises claims and a right to relief that depend upon the resolution of numerous disputed and substantial questions of federal law, including questions under the federal Clean Air Act ("CAA") and associated regulations issued by the federal Environmental Protection Agency ("EPA").  *See* 28 U.S.C. §§ 1331, 1441(a); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005).

Although the State nominally seeks to enforce state standards governing motor vehicle fuel emissions, the crux of its Complaint is that defendants installed software programs in certain vehicles that are illegal "defeat devices" and render invalid the vehicles' certificates of conformity ("COC") with emissions regulations.  Compl. ¶¶ 3-4, 129-30, 147-49.  Whether the software programs are "defeat devices" that trigger liability for certified vehicles and whether such defeat devices render invalid already-issued certificates of conformity are questions that turn entirely on federal law.  These federal questions are also at issue in the more than 650 cases already filed against defendants, including by the United States at the EPA's request and, more generally, have broad implications for the CAA's comprehensive emissions regulatory scheme

In further support of this Notice of Removal, defendants state as follows:

## BACKGROUND AND PROCEDURAL HISTORY

1.      On January 19, 2016, the State of New Mexico, acting through Hector Balderas, the New Mexico Attorney General, filed this action in the First Judicial District Court, Santa Fe County, New Mexico, as case number D-101-CV-2016-00131.  The State's Complaint names six defendants: Volkswagen Group of America, Inc., Volkswagen AG, Audi of America, LLC, Audi AG, Porsche Cars North America, Inc., and Porsche AG.

2.      Counsel for defendants VWGoA, VWAG, Audi America, and Audi AG, accepted service of the Complaint and Summons by e-mail on February 4, 2016.  *See* New Mexico Rule of Civil Procedure 1-004(G)(1)(a); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (time for removal runs from receipt of formal service of process).  Counsel for Porsche AG and PCNA accepted service of the Complaint and Summons by e-mail on February 11, 2016.  As a result, this notice of removal is timely filed.

3.      This Notice of Removal is accompanied by the certified state court file, including the complaint, docket sheet, and correspondence defendants received from the State on January 26, 2016, all of which is attached as Exhibit A.  Other than the documents attached as Exhibit A, no pleadings, process, orders, or other documents in the case have been served or otherwise received by defendants or, to their knowledge, are presently on file in the state court.  Should such filings come to defendants' attention, true and legible copies will immediately be filed with this Court.

4.      Defendants are serving written notification on the State's counsel and filing a Notice of Filing Notice of Removal, attaching a copy of this Notice of Removal, with the Clerk for the First Judicial District Court in Santa Fe County, New Mexico.

5.      This action is based upon allegations concerning the widely-publicized EPA Notices of Violation dated September 18, 2015, and November 2, 2015, that addressed the alleged installation of emissions testing "defeat devices" in certain of defendants' diesel vehicles. *See* Compl. ¶¶ 9-19.  The State claims that the installation of these devices was illegal.  *See id.* ¶¶ 52, 57, 125, 131-49, 195-98, 209.

6.      Plaintiffs across the Nation have already filed over 650 putative class actions and individual actions in federal court against defendants based on similar allegations regarding the use of undisclosed software in the emissions control systems of defendants' vehicles, which circumvented or defeated the purpose of the emissions tests established by the EPA (this software and its calibrations are called in the pleadings "defeat devices").

7.      On December 8, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring the hundreds of pending actions raising common issues of fact and

3

law to the U.S. District Court for the Northern District of California (Breyer, J.) for coordinated and/or consolidated pre-trial proceedings.  In its order, the JPML noted that "the actions in this litigation involve common questions of fact, and . . . centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  Subsequently-filed actions, including an action filed by the United States at the request of the EPA Administrator, have been transferred to the MDL.  An MDL proceeding conserves the resources of the litigants and promotes judicial economy relating to these issues.

8.      The State's claims are properly removable to this Court and should be adjudicated in the MDL recently established in the Northern District of California, which involves hundreds of actions asserting claims that arise from the same factual allegations as this one and that raise the same questions of law concerning defeat devices, the validity of certificates of conformity, and emissions regulations. Upon removal this case will be immediately tagged for transfer to the MDL.

### PARTIES

9.      The named Plaintiff is the State of New Mexico, acting through its Attorney General, Hector Balderas.  Compl. ¶ 29.

10.      VWGoA is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  VWGoA is a wholly-owned subsidiary of VWAG.

11.     VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is the direct parent corporation of VWGoA,  and Audi AG, and the indirect parent corporation of Porsche AG.

12.     Audi America is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  Audi America is a wholly-owned subsidiary of Audi AG.

13.     Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.  Audi AG is the parent of Audi America and a subsidiary of the Audi Group, which is a wholly-owned subsidiary of Volkswagen AG.

14.     PCNA is a Delaware corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354.  PCNA is An indirect wholly-owned subsidiary of Porsche AG.

15.     Porsche AG is a German corporation with its principal place of business in Stuttgart, Germany.  Porsche AG is the parent of PCNA and is an indirect, wholly-owned subsidiary of VW AG.

16.     Each defendant joins in or consents to this notice of removal without waiving any defenses it may have as to personal jurisdiction.  *See, e.g.*, *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929) ("Petitioner suggests that, by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived.  Our decisions are to the contrary."); *Doyn Aircraft, Inc. v. Wylie*, 443 F.2d 579, 581 (10th Cir. 1971) (noting the ability to remove "without waiving the right to contest the issue of personal jurisdiction"); *see also* 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N.

Steinman, *Federal Practice and Procedure* § 1395 (3d ed. 2015) ("A party who removes an action from a state to federal court does not thereby waive any of his or her Federal 12(b) defenses or objections.").

## BASES FOR REMOVAL JURISDICTION

17.     The Complaint brings three claims: Count 1 for Violations of the New Mexico Air Quality Control Act ("AQCA claim"), Count 2 for Violations of the New Mexico Unfair Practices Act ("unfair practices claim"), and Count 3 for common law public nuisance ("nuisance claim").  Each claim turns on allegations that defendants installed software programs that are illegal defeat devices and thereby rendered invalid the vehicles' certificates of conformity with emissions regulations and/or violated "applicable" emissions standards.  *See, e.g.*, Compl. ¶ 3 ("This case arises because Defendants . . . design[ed], engineer[ed], and install[ed] in certain of their vehicles 'defeat device' software that was specifically intended to thwart emissions testing . . . ."); *id.* ¶ 163 ("The claims alleged herein did not accrue until the Plaintiff discovered that the Defendants' Affected Vehicles were equipped with illegal defeat devices."); *id.* ¶ 172 (defendants sold "cars equipped with a defeat device that rendered invalid their California emissions certifications"); *id.* ¶ 196 (defendants falsely represented that its vehicles "complied with emissions standards in the United States"); *id.* ¶ 209 (defendants sold "vehicles that fail to comply with applicable emissions standards" and "are not validly certified to California standards").

18.     The State of New Mexico's right to relief based on these allegations requires resolution of substantial, disputed questions of federal law.  To begin with, and as the State's allegations show on their face, *see* Compl. ¶¶ 17, 131–49, the "applicable" emissions standards

6

are in fact *federal* standards, not New Mexico standards, for all but a fraction of one model year of the Affected Vehicles, as the State concedes in its Complaint.  Moreover, even though New Mexico law may set the numerical emissions standards for some vehicles at issue, the question whether the installed software programs are illegal defeat devices and whether any such defeat device rendered invalid already-issued certificates are addressed under federal law.  The State points to **no** provision of New Mexico law that purports to define an "illegal defeat device," a term it uses repeatedly throughout the Complaint, nor does it point to any state law that governs whether a defeat device "renders invalid" a certificate of conformity with emissions regulations. Because such questions turn on federal law and implicate substantial national interests under the CAA, removal is proper.

### A.    STATUTORY BACKGROUND

19.    A review of the CAA leaves no doubt that in "contrast to federally encouraged state control over stationary sources [of environmental pollution], regulation of motor vehicle emissions ha[s] been a principally federal project."  *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996); *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 938 (9th Cir. 2011) ("On the other hand, the federal government sets nationwide emissions standards for mobile sources"); *id.* ("The regulatory difference is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by  individual states.").  Without national control, the transitory nature of cars could create  regulatory "nightmares" for manufacturers, who would otherwise face fifty different standards in fifty different states—not to mention additional standards from other localities. *Motor &  Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109

(D.C. Cir. 1979).  Were this purpose not plain enough, other provisions of the CAA confirm Congress's intent for the federal government to maintain control over mobile emissions standards, including:

      a.      Section 202(a)(l) of the CAA directs the EPA to "prescribe . . . standards applicable to the  emission of any air pollutant from any class or classes of new motor vehicles or new motor  vehicle engines."   *See* 42 U.S.C. § 7521(a)(l).

      b.      Section 203(a) of the CAA enumerates prohibited acts under the CAA.

      c.      Section 204 requires that actions to enjoin violations of section 203(a) be brought in the name of the United States.   *Id.* § 7523(b).

      d.      Section 205 allows only the EPA Administrator to bring an action for civil penalties for violations of section 203(a). *Id.* § 7524(b).

      e.      Section 206 requires the EPA to set up a testing process to ensure that vehicles and engines conform with the emissions standards set by section 202 and any associated regulations. *Id.* § 7525.  The EPA must certify that each vehicle or engine on the market conforms to these standards.  Without such certification the vehicle cannot be sold.  *Id.*

      f.      Section 207(c) permits only the EPA Administrator to pursue a product recall if a substantial number of vehicles do not meet emission standards set forth in regulations prescribed under section 202. *Id.* § 7541(c).

      g.      Section 304 allows citizen suits in federal district courts to enforce certain emission standards. *Id.* § 7604.

20.     The sole exception to total federal control is the CAA provisions that allow California to develop and enforce more stringent emissions standards and regulations.  *See id.* § 7543(b)(1).  Even then, however, the EPA must review and approve California's proposals. *See id.*; *see also Virginia v. EPA*, 108 F.3d 1397, 1401 (D.C. Cir. 1997) ("[O]ne must understand that there are two, and only two, permissible sets of regulations limiting emissions from new cars sold in the United States.  There are the California regulations; and there are the federal regulations . . . ."), *modified in nonrelevant part on reh'g,* 116 F.3d 499 (D.C. Cir. 1997).  A 1977 amendment to the CAA allows other States to choose to adopt and enforce standards identical to EPA-approved California standards, 42 U.S.C. § 7507, which the State of New Mexico did here for just a fraction of one model year of the vehicles at issue.

21.     Ultimately, any resolution of the State's purported state law claims necessarily requires resolution of federal law and turns exclusively on claimed CAA and federal regulatory violations.

### A.     THE STATE'S CLAIMS TURN ON SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW THAT HAVE NATIONAL CONSEQUENCE.

22.     Although the State dresses its claims for relief in the garb of state law, courts regularly look past the nominal cause of action to the litigation realities when deciding whether federal question jurisdiction exists.  *See, e.g.*, *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 28 (1983) (federal question jurisdiction exists over state law claims when "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"); 13D Wright et al., *supra*, § 3562 ("Throughout these cases, one important factor has been the [Supreme] Court's willingness—on occasion—to look beyond the

law that created the claim being asserted to view the litigation reality in assessing whether there is a need for federal question jurisdiction.").

23.     In particular, the Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, *& Sons Metal Prods., Inc. v. Darue Eng'g Mfg.,* 545 U.S. 308, 312 (2005); *see also Gilmore v. Weatherford,* 694 F.3d 1160, 1173–74 (10th Cir. 2012) (removal proper where "the federal issue is 'substantial'" and the questions raised "would apply to a fair number of disputes"); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236 (10th Cir. 2006) (similar).   "[E]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 164 (1997).   "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

24.     Here the face of the State's complaint demonstrates that its right to relief under its purported state law claims requires resolution of two sets of disputed and substantial federal questions each of which independently gives rise to federal-question jurisdiction.   *See Nicodemus*, 440 F.3d at 1234.

25.     *First*, the allegations of the State's unfair practices and nuisance claims (Counts 2 and 3) require the Court to resolve whether *federal* emissions standards were dramatically exceeded, a question which can be resolved only by application of federal law, *i.e.*, the EPA's regulations and testing protocol.  While the State repeatedly references New Mexico standards (which were adopted under section 177 of the CAA and therefore mirrored the EPA-approved California standards), New Mexico had statewide emissions standards in effect for just a fraction of one of the eight model years at issue, as the Complaint recognizes, Compl. ¶¶ 17, 138.  The applicable emission standards for most of the vehicles in question are therefore federal.

26.     The Complaint also relies on the Albuquerque-Bernalillo County emissions standards for new motor vehicles.  Compl. ¶ 139, as a foundation for the state law claims. The reliance is unfounded. While the CAA permits *States* to adopt California emission standards approved by the EPA, the CAA does not explicitly authorize local governments to do so. *Compare* 42 U.S.C. § 7543(a) ("No State *or any political subdivision thereof* shall adopt . . ." (emphasis added), with *id.* § 7507 "*any State* which has plan provisions . . . identical to the California standards for which a waiver has been granted" (emphasis added).  If Congress had intended to allow local governments to enforce their own emission standards for new motor vehicles, it could have expressly done so.  It did not.  Therefore, whether or not the CAA allows local governments to enforce emission standards for new vehicles is itself a federal question.

27.     To prove an unfair practices claim, a plaintiff must show "a false or misleading oral or written statement . . . knowingly made in connection with the sale, lease, rental or loan of goods or services . . . that may, tends to, or does deceive."  NMSA 1978, § 57-12-2(D).  The State alleges that defendants' statements that the Affected Vehicles were "'clean,' 'green,' and

11

'environmentally-friendly' or 'eco-friendly'" were false because the Affected Vehicles "dramatically exceeded emissions regulations for harmful pollutants." Compl. ¶ 195. The premise for showing a false statement, therefore, is that defendants' vehicles "dramatically exceeded" emissions standards.

28.     The face of the Complaint shows that the ***only*** applicable emissions standards for a great number of the "Affected Vehicles" are federal not state regulations.  Specifically, the Complaint alleges that the "Affected Vehicles" include 16 makes and models of defendants' vehicles that span model years 2009 to 2016. *See id.* ¶ 17.  Pursuant to Section 177 of the CAA, New Mexico had in place statewide emission standards (which matched California's EPA-approved, more stringent standards) but "***only for*** Affected Vehicles model year 2011 and greater between December 31, 2007 and January 31, 2011." *Id.* ¶ 138 (emphasis added).  In other words, ***except for*** a fraction of model year 2011, there were no applicable statewide standards; instead, federal standards applied. Moreover, ***only*** federal standards are at issue for defendants PCNA and Porsche AG because the vehicles at issue for these defendants only relate to model years after 2011. *See id.* ¶ 17 (defining "Affected Vehicles" as to Porsche to mean the 2013-2016 Cayenne.)

29.     The Complaint repeatedly invokes ***federal standards*** in alleging an unfair practices claim and throughout. *Id.* ¶ 196 (defendants falsely stated that the Affected Vehicles complied with "emissions standards in the United States."); *id.* ("All such representations were unfair, deceptive, false or misleading because the cars did not comply with any of these emissions standards."); *see also id.* ¶ 10 (alleging that defendants' alleged installation of "defeat device[s]" was "designed and intended to circumvent EPA emissions standards for nitrogen

oxides"); *id.* ¶ 51 (alleging that defendants knew "that the only way [they] could meet U.S. emissions requirements was to install software to cheat emissions testing"); *id.* ¶ 131 ("With respect to vehicle emissions, the federal Clean Air Act, and regulations implemented thereunder by the federal Environmental Protection Agency, set a federal minimum standard to control vehicle pollution.").

30.    The same analysis applies to the public nuisance claim.  To prove a public nuisance claim, a plaintiff must show a "public nuisance . . . which adversely affects public health, welfare, or safety." *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 17, 149 N.M. 556, 252 P.3d 780 (quoting *Padilla v. Lawrence,* 1984-NMCA-064, 101 N.M. 556, 685 P.2d 964). New Mexico's public nuisance statute provides that a "public nuisance consists of knowingly creating, performing or maintaining anything affecting any number of citizens ***without lawful authority*** which is either (A) injurious to public health, safety, morals or welfare; or (B) interferes with the exercise and enjoyment of public rights, including the right to use public property." NMSA 1978, § 30-8-1 (emphasis added).  The State alleges that defendants created a public nuisance by "selling and promoting vehicles that fail to comply with applicable emissions standards," because that activity is "contrary to law."  Compl. ¶ 209.  Resolving whether defendants acted "without lawful authority" under applicable emission standards, which as noted just above, for all but one of the model years at issue were federal, *see id.* ¶ 138, necessarily requires interpretation and application of federal law.

31.    Both claims are explicitly premised on a determination under federal law that defendants violated federal emissions standards prescribed by the CAA and the EPA.  Federal law is thus "an 'essential element'" of the State's claims. *Gilmore*, 694 F.3d at 1173 (upholding

federal jurisdiction over state law conversion claim because plaintiff's theory of liability "includes and incorporates the federal requirement [relating to agency approval] for purposes of the conversion claim").  Courts regularly sanction removal of cases where an essential element of the state law claim is an alleged violation of a federal standard.  *See, e.g., id.* ("To win under this particular theory of conversion, plaintiffs must show that the Secretary's advance approval is required under federal law . . . .  Accordingly, the conversion claim 'necessarily raise[s] a stated federal issue.'" (quoting *Grable*, 545 U.S. at 314); *Nicodemus*, 440 F.3d at 1235 ("To prove that Union Pacific acted unlawfully, Plaintiffs must establish that the right-of-way [granted by operation of federal law] prohibited the use to which it was put."); *see also Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015) ("While state law may create the breach-of-contract causes of action, the only disputed issues involve the proper interpretation of Section 8 [of the United States Housing Act of 1937] and HUD's implementing guidance."); *Homestead Affordable Hous., Inc. v. Fed. Home Loan Bank Topeka*, No. 5:13-CV-4111-EFM-JPO, 2014 WL 3854147, at *6 (D. Kan. Aug. 5, 2014) ("Just as in *Grable* and *Nicodemus,* Defendant's potential state-law claims for breach of contract *necessarily* involve construing the remedial provisions of a federal regulation governing a federal program.").[1]

---

[1]     *See also, e.g., R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envt'l Mgmt.*, 585 F.3d 42, 47 (1st Cir. 2009) (exercise of federal question jurisdiction appropriate "[d]espite the fact that the complaint alleged only state-law causes of action"); *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 775 (8th Cir. 2009) ("[The business's claims] present a substantial federal question because it directly implicates actions taken by the Commission in approving the . . . program."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 79 (D. Mass. 2006) (claim that defendants violated Arizona Consumer Fraud Act and the Arizona Racketeering Act properly removed despite assertion in complaint that state law claims did not raise any federal issues where resolution turned on definition of "average wholesale price," a term included in federal regulations); *Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973, 985–86 (continued…)

32.    **Second**, the State's right to relief under the AQCA claim, the unfair practices claim, and public nuisance claims, depend entirely on, and require the resolution of, separate disputed federal questions, namely whether the alleged installation of "illegal defeat devices" rendered invalid the vehicles' certificates of conformity.

33.    Specifically, to prove a claim under the AQCA, the State must show "that a person has violated or is violating a requirement or prohibition of the Air Quality Control Act, a regulation promulgated pursuant to that act or a condition of a permit issued under that act." NMSA 1978, § 74-2-12(A).  Invoking sections 20.2.88.101.A and 20.11.104.101.A of the New Mexico Administrative Code, as they applied to model year 2011, the State alleges that defendants violated those provisions' requirement that vehicles sold in New Mexico must be certified to California standards.  Compl. ¶ 178.  The State does not allege that defendants sold vehicles without certifications.  Rather, the State alleges that defendants sold vehicles with **invalid** certifications.  *Id.* ¶ 182.  The essential factual predicate to establish a certification's invalidity, according to the Complaint, is that defendants' vehicles were "equipped with a defeat device that rendered invalid their California emissions certifications."  *Id.* ¶ 172; *see also id.* ¶ 209 (defendants created a public nuisance by selling "vehicles that fail to comply with applicable emissions standards" and "are not validly certified to California standards").  The Complaint further alleges that federal determinations issued by the EPA under federal law, *viz.* Notices of

---

(M.D. Tenn. 2014) (state court action alleging state law causes of action properly removed because the complaint invoked the federal Medical Device Act); *Arrington v. Medtronic, Inc.*, No. 2:14-CV-02473-JTF, 2014 WL 10384579, at *9 (W.D. Tenn. Sept. 2, 2014) (substantial federal question exists where "Plaintiffs cannot prevail on their claims, unless they prove that Defendants violated federal requirements").

Violation under the CAA regarding the use of those defeat devices to circumvent federal emission standards, rendered "illegal" the defeat devices defendants allegedly used.  *See, e.g.,* ¶¶ 10, 163.  Resolving these questions necessarily requires interpretation of federal law.

34.     In addition to the AQCA claim's specific references to the alleged use of an illegal defeat device and its effect on certifications, the central theory of the State's action is that defendants allegedly violated state law by "for many years[,] . . . designing, engineering, and installing in certain of their vehicles 'defeat devices' software that was specifically intended to thwart emissions testing for harmful pollutants and then introducing those vehicles into this [New Mexico]."  *Id.* ¶ 3.  The State alleges that defendants used "illegal" defeat devices, *e.g., id.* ¶ 163, and that the EPA issued Notices of Violation under the CAA regarding the use of those defeat devices to circumvent emissions standards.  *Id.* ¶ 10.

35.     Indeed, as spelled out in the EPA's Notice of Violation cited in the Complaint, *id.* ¶ 10, federal law is an essential ingredient of the State's claims under New Mexico law. ("Volkswagen's misconduct was made public when the EPA issued a Notice of Violation of the Clean Air Act . . . stating that model year 2009-2015 Volkswagen and Audi diesel cars equipped with 2.0 liter TDI® engines included 'defeat device' software designed and intended to circumvent EPA emissions standards for nitrogen oxides."); *see also* September 18, 2015 EPA Notice of Violation, http://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf.  The Notice of Violation further provides, citing 40 C.F.R. § 86.1803-01, that "[a] defeat device is an [auxiliary emission control device (AECD)] 'that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use," with certain exceptions.  And it states that

"[m]otor vehicles equipped with defeat devices, such as those at issue here, cannot be certified," citing *inter alia* 40 C.F.R. § 86.1809-10(a) ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device."). Finally, the Notice asserts that "due to the existence of the defeat devices in these vehicles, these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them," and defendants therefore violated section 203(a)(1) of the CAA. Sept. 18 EPA Notice of Violation at 1-2.

36.     In contrast to the Notice of Violation, and the federal provisions cited therein, no provision of New Mexico law references defeat devices or their effect on emissions certifications. Certainly the Complaint cites to no such provision. Indeed, AQCA and its applicable regulations (including the EPA-approved California provisions that were incorporated into New Mexico law for a fraction of a single model year) do not define or even refer to a defeat device, nor do they say whether the use of a defeat device renders invalid a certificate of conformity.

37.     Thus, for the State's AQCA claim, the necessary element of showing that vehicles were sold without certifications must turn on federal law, including the interpretation of federal emissions regulations and whether the software programs at issue rendered the certificates of conformity invalid. These disputed legal questions are already at issue in the MDL, and their resolution turns on an interpretation of the CAA that has nationwide consequence, making this case removable. *Cf.* Compl. ¶¶ 105, 111, *United States v. Volkswagen AG*, Dkt. # 1 (E.D. Mich. Jan. 4, 2016) (alleging  inter alia, that Volkswagen violated the CAA by selling new motor

vehicles "that were not covered by a [certificate of conformity]" and "by manufacturing selling, offering for sale, or installing 'defeat devices' on new motor vehicles").  See *cases cited supra* Paragraph 31 & n. 1.  That is precisely the case here.

38.     ***Finally***, not only are there at least two categories of disputed federal questions that the State has necessarily raised in its Complaint, but those issues are "substantial" and "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065.  The federal questions raised in the State's Complaint are substantial because they "implicate significant federal issues."  *Grable*, 545 U.S. at 310; *see also Franchise Tax Bd.*, 463 U.S. at 28.   There is a substantial federal interest in resolving the important issues surrounding allegations of using defeat devices, rendering invalid certificates of conformity, and violating federal emissions standards.  As the Complaint alleges, defendants sell vehicles throughout the nation and indeed, throughout the world.  Compl. ¶ 16.  The need for uniformity in addressing these questions is acute, as evidenced by the fact that the controversy over allegations relating to defendants' potential use of defeat devices has resulted in consolidation of hundreds of lawsuits in the Northern District of California.  Under the *Grable* standard, a case like this gives rise to federal question jurisdiction and is removable to federal court.

**B.     THIS COURT HAS SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. § 1367 FOR ANY CLAIMS NOT INDEPENDENTLY REMOVABLE.**

39.     It is axiomatic that where federal question jurisdiction exists over any one of the claims in a removed action, the Court possesses federal jurisdiction over the case as a whole. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165-66 (1997) ("Here, once the case was removed, the District Court had original jurisdiction over ICS' claims arising under federal law, and thus could exercise supplemental jurisdiction over the accompanying state law claims so long as those claims constitute 'other claims that . . . form part of the same case or controversy.'" (quoting 28 U.S.C. § 1367(a)); *Kimbrell v. Chaves Cnty. Clerk*, 562 Fed. App'x 722, 723 (10th Cir. 2014) ("And once the district court had removal jurisdiction, it also had supplemental jurisdiction to decide related state-law claims."); *Ruby v. Sandia Corp.*, 699 F. Supp. 2d 1247, 1282 (D.N.M. 2010) ("A state claim can also be removed using supplemental jurisdiction, provided that another claim in the Complaint is removable.").  Even if only one of the removed claims falls under federal question jurisdiction, any state law claims that derive from a common nucleus of operative fact are also removable.  *Ruby*, 699 F. Supp. 2d at 1281; *Carroll v. City of Albuquerque*, 749 F. Supp. 2d 1216, 1223 n.3 (D.N.M. 2010).

## REMOVAL TO THE DISTRICT OF NEW MEXICO IS PROPER

40.    Removal to the District of New Mexico is proper because it is the district within which the state action is pending.  *See* 28 U.S.C. § 1446(a).

WHEREFORE, the case now pending in the First Judicial District Court, Santa Fe County, New Mexico, Case No. D-101-CV-2016-00131, is hereby removed to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. §§ 1441.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A..

By: *"Electronically Filed" /s/ Andrew G. Schultz*
      Andrew G. Schultz
P.O. Box 1888
Albuquerque, NM 87103
Telephone:    (505) 765-5900
Facsimile:    (505) 768-7395
Email:       aschultz@rodey.com

*Attorneys for Volkswagen Group of America, Inc.,
Volkswagen AG; Audi of America, LLC, and Audi AG*

MODRALL SPERLING

By: */s/ Susan Miller Bisong*
      Susan Miller Bisong
      Christina C. Sheehan
P.O. Box 2168
Albuquerque, New Mexico 87103
Telephone:    (505)848-1801
Facsimile:    (505)848-9710
Email:       susan.bisong@modrall.com
             christina.sheehan@modrall.com

*Attorneys for Porsche Cars North America, Inc., and
Porsche AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2016, a true and correct copy of the foregoing *Notice of Removal* was served on the following counsel for Plaintiff by U.S. mail and electronic mail:

HECTOR H. BALDERAS
NEW MEXICO ATTORNEY GENERAL
Peter S. Auh
Deputy Attorney General for Civil Affairs
408 Galisteo Street
Santa Fe, NM 87501
Email: pauh@nmag.gov

GRANT & EISENHOFER. P.A.
Adam J. Levitt
Edmund S. Aronowitz
30 North LaSalle Street Suite 2350
Chicago, ILL  60602
Email:  alevitt@gelaw.com
            earonowitz@gelaw.com

GRANT & EISENHOFER. P.A.
Jay W. Eisenhofer
485 Lexington Avenue
New York, NY  10017
Email:  jeisenhofer@gelaw.com

GRANT & EISENHOFER. P.A.
Jeffrey A. Almeida
Kyle McGee
123 Justison Street
Wilmington, DE  19801
Email:  jalmeida@gelaw.com
            kmcgeez@gelaw.com

ROBLES, RAEL & ANAYA, P.C.
Marcus J. Rael
Jordon P. George
500 Marquette Ave., NW, Suite 700
Albuquerque, NM  87102
Email: marcus@roblesrael.com
jordon@roblesrael.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.


By_____*/s/ Andrew G. Schultz*_____.
           Andrew G. Schultz

21